# EXHIBIT A

This instrument prepared by:
Darryl Steve Traylor, Jr.
Borowski & Traylor, P.A.
25 W. Cedar Street, Suite 525
Pensacola, Florida 32502

STATE OF FLORIDA
COUNTY OF OKALOOSA

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT, dated the _____ day of _____, from **LARRY REEDER as Trustee of the Zachos Life Insurance Trust dated February 26, 1998**, whose address is 4635 Gulfstarr Dr., Suite 300, Destin, Florida 32541, (hereinafter the "**Mortgagor**"), as to separate non-homestead property, to **CHARTERBANK** (herein called the "**Mortgagee**"), whose mailing address is 1289 Airport Blvd., Pensacola, Florida 32504, for the following uses and purposes:

### WITNESSETH:

**SECTION 1.**

1.01   **PREMISES.** Mortgagor, for and in consideration of the premises, as security for the Secured Indebtedness, as that term is hereinafter defined, and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby bargain, sell, convey and grant unto the Mortgagee, its successors and assigns, the following (hereinafter collectively the "Premises"):

    A.   **REAL PROPERTY.**   Those certain parcels of real property lying and being in Okaloosa County, Florida and being more particularly described on **Exhibit "A"** attached

1

hereto and made a part hereof.

B. **<u>IMPROVEMENTS</u>**. All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Real Property, all building materials, plans, specifications, drawings and books and records pertaining to design or construction of any buildings, structures and improvements now or hereafter situated on the Real Property, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantles, air conditioning apparatus, refrigeration plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes which are or shall be attached to said buildings, structures or improvements and all other furnishings, fixtures, machinery, equipment, appliances, materials, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever, now or hereafter owned by Mortgagor and located in, on or about, or used or intended to be used with or in connection with the use, operation and enjoyment of the Real Property, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Mortgagor in any such furnishings, furniture, fixtures, machinery, equipment, appliances, and personal property subject to or covered by any prior security agreements, conditional sales contract, chattel mortgage or similar liens or claims, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Real Property and a part of the Premises as between the parties hereto and all persons claiming by, through or under them.

C. **<u>APPURTENANCES</u>**. All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, and passages, sewer rights, water rights and powers, minerals, flowers, shrubs, trees and other emblements now or hereafter located on the Real Property or under or above the same or any part or parcel thereof and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversions and remainders, whatsoever, in any way belonging, relating or appertaining to the Real Property or Improvements or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor.

TO HAVE AND TO HOLD the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, to Mortgagee, its successors and assigns in fee simple forever.

1.02 **<u>PERMITTED ENCUMBRANCES</u>**. Mortgagor, for itself and its successors, assigns and legal representatives, covenants with Mortgagee, its successors and assigns, that: (i) Mortgagor is indefeasibly seized of the Premises in fee simple (parcel 1 being a partial interest); that Mortgagor has full power and lawful right to convey the same in fee simple as

aforesaid; that it shall be lawful for Mortgagor, its successors and assigns at all times peaceably and quietly to enter upon, hold, occupy and enjoy the Premises and every part thereof; that the Premises and every part thereof is free from all encumbrances of every kind and character except for taxes assessed for the year of closing and all other extant liens, encumbrances, easements, rights of way, declarations, covenants, restrictions, and mortgages that were of record as of March 26, 2013  (the "Permitted Encumbrances"); that the Mortgagor will make such further assurances to perfect the fee simple title to the Premises in Mortgagee, its successors and assigns, as may reasonably be required; that the Mortgagor does hereby fully warrant the title to the Premises and every part thereof and will defend the same against the lawful claims of all persons whomsoever except for the Permitted Encumbrances; (ii) Mortgagor shall duly, promptly and fully perform, discharge, execute, effect, complete, comply with and abide by each and every of the stipulations, agreements, conditions and covenants of this Mortgage; (iii) the Premises and its use fully complies with all applicable building and zoning codes and other land use regulations, any applicable environmental laws or regulations, and any other applicable laws or regulations; (iv) to Mortgagor's knowledge, no part of the Real Property has been unlawfully artificially filled; and (v) Mortgagor has lawful access to the Premises from a public road.  Mortgagee represents that there are no extant leases containing any option(s) to purchase the Premises or any part thereof.

1.03 **SECURED INDEBTEDNESS.**          This conveyance is intended to be and is a real property Mortgage and a "Security Agreement" governed by the laws of the State of Florida concerning mortgages and the Uniform Commercial Code as adopted in Florida, and is intended to secure the payment of the following (the "Secured Indebtedness"):

A.   The indebtedness represented by and set forth in that certain Mediated Settlement Agreement dated December 31, 2013 (herein "Mediated Settlement Agreement" or "Agreement"), the same being incorporated herein by reference, for the total sum of **eight hundred ninety thousand dollars** ($890,000.00) owed by **Thomas Zachos and Kalliope Zachos** (the "Obligors") to the Mortgagee, with 0% interest for twelve (12) months and with interest thereafter as set forth in the Agreement, until paid, the said principal and interest payable in the manner and upon the terms, provisions and conditions set forth in the Mediated Settlement Agreement, together with any and all renewals, extensions, modifications, consolidations and extensions thereof;

B.   Such future or additional advances as may be made by Mortgagee at the option of Mortgagee to the Obligors, and also, the payment of any and all indebtedness, liabilities, and obligations of the Obligors to Mortgagee, its successors or assigns, whether as maker, endorser, guarantor or otherwise, and whether such indebtedness, liabilities or obligations, or any of them, be now in existence or accrue or arise hereafter, or be now owned or held by Mortgagee, or be acquired hereafter, it being the intent and purpose of the Mortgagor to secure, by the Mortgage, all indebtedness, claims, demands, liabilities and obligations which Mortgagee, its successors or assigns, may have, hold or acquire at any time during the life of this Mortgage

3

against the Obligors.  Provided that, notwithstanding the foregoing, the total of all amounts secured hereby shall not exceed at any one time the sum of  eight hundred ninety thousand dollars ($890,000.00), plus interest thereon; and provided, further, that all such advances, indebtedness, claims, demands or liabilities and obligations secured hereby be incurred or arise or come into existence either on or prior to the date of this Mortgage, or on or before twenty (20) years after the date of this Mortgage or within such lesser period of time as may hereafter be provided by law as a prerequisite for the sufficiency of actual notice or record notice of such advances, indebtedness, claims, demands or liabilities and obligations as against the rights of creditors or subsequent purchasers for a valuable consideration.  The Mortgagor hereby waives, on behalf of himself and his successors and assigns, the right to file for record a notice limiting the maximum principal amount which may be secured by this Mortgage as provided for in Florida Statutes 697.04(1)(b); and

C. The compliance with all the covenants, agreements and stipulations of this Mortgage, the Mediated Settlement Agreement, and any and all documents or instruments evidencing, securing or otherwise executed in connection with the Secured Indebtedness.

1.04 **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor hereby assigns, transfers, sets over and pledges to Mortgagee, its successors and assigns, as further security and means for the discharge of the Secured Indebtedness, all leases of all or any part of the Premises now made, executed or delivered, whether written or verbal, or to be hereafter made, be the same written or verbal, and all of the rents, issues and profits of the Premises and the improvements now or hereafter thereon, which rents, issues and profits may become due and payable at any time during the life of this Mortgage when any amount shall be due and unpaid by the  Obligors  or when the Obligors or Mortgagor shall otherwise be in default hereunder or under the Mediated Settlement Agreement, whether said rents, issues and profits shall be due from the present or any future tenants or leases thereof, with full power and authority in Mortgagee or its assigns to collect and receive the same from said tenants or leases or from any real estate agent or other person collecting the same, and to give proper receipts and acquittances therefor and after paying all commissions of any rental agent collecting the same and any attorney's fees and other expenses incurred in collecting the same to apply the net proceeds of such collections upon any and all indebtedness, obligations, undertakings or liabilities of the Mortgagor or Obligors.  The effectiveness and priority among assignments of leases and rents is governed by Section 695.01 and Section 695.11, Florida Statutes.

## SECTION 2.

Mortgagor further covenants and agrees as follows:

2.01 **PAYMENT OF INDEBTEDNESS.**    To pay or cause to be paid all and singular the principal and interest and other sums of money payable by virtue of the Secured Indebtedness, as set forth in the Mediated Settlement Agreement, any instrument or instruments evidencing

one or more future or additional advances, if any, and/or this Mortgage provided, promptly on the days that the same respectively become due.

2.02 **MAINTENANCE AND REPAIR:** To keep reasonably maintain and repair the security hereby given and to permit, commit or suffer no waste, impairment or deterioration of the Premises or any part thereof.  Mortgagor shall comply with all restrictive covenants, statutes, ordinances and requirements of any governmental authority relating to the Premises, and shall not join in, consent to or initiate any change in such restrictive covenants, statutes, ordinances or requirements without the express written consent of Mortgagee.

2.03 **TAXES, LIENS AND OTHER CHARGES.** To pay all and singular the taxes, assessments, obligations and encumbrances of every nature now on the Premises or that hereafter may be levied, assessed or imposed thereon when due and payable according to law and before they become delinquent; and if the same not be promptly paid Mortgagee may, at any time either before or after delinquency, pay the same without waiving or affecting its right to foreclose this Mortgage or any other right hereunder and all sums so paid shall become a part of the Secured Indebtedness and at the option of Mortgagee, shall bear interest from the date of each such payment at the Florida statutory rate applicable to monetary judgments.

2.04 **INSURANCE.** Mortgagor will keep, or require its tenant(s) to keep, the improved parcels of the Premises insured against loss or damage by fire, flood and such other risks and matters, as Mortgagee may from time to time reasonably require in amounts reasonably required by Mortgagee, not exceeding in the aggregate 100% of the full insurable value of the  improved parcels of the Premises and shall pay the premiums for such insurance as same become due and payable.  All policies of insurance (the "Policies") shall be issued by an insurer acceptable to Mortgagee and shall contain the standard New York Mortgagee non-contribution provision naming the lienholders, including the Mortgagee, in the order of recorded lien priority, as loss payees.   Within ten (10) days of Mortgagee's request to do so, Mortgagor will provide Mortgagee with proof of the insurance policies, including renewal thereof, required by this section..  If the Premises shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee.  Sums paid to Mortgagee by any insurer may be retained and applied by Mortgagee toward payment of the Secured Indebtedness in such priority and proportions as Mortgagee in its discretion shall deem proper or, at the discretion of Mortgagee, the same may be paid, either in whole or in part, to Mortgagor for such purposes as Mortgagee shall designate.  If Mortgagee shall receive and retain such insurance money, the lien of this Mortgage shall be reduced only by the amount thereof received after expenses of collection and retained by Mortgagee and actually applied by Mortgagee in reduction of the Secured Indebtedness.

2.05 **EXPENSES.** To pay all and singular the costs, charges and expenses, including reasonable attorneys' fees and costs of abstracts of title, incurred or paid at any time by Mortgagee or its assigns in collecting or attempting to collect the Secured Indebtedness or in foreclosing or

attempting to foreclose this Mortgage or in enforcing any of its rights hereunder or incurred or paid by it because of the failure on the part of the Mortgagor or Obligors to promptly and fully to perform the terms and conditions set forth in the Mediated Settlement Agreement evidencing the Secured Indebtedness and this Mortgage; and said costs, charges and expenses shall be immediately due and payable and shall be secured by the lien of this Mortgage.

2.06 **CONDEMNATION.** Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, payments of principal and interest shall continue to be made on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Mortgagee of any award or payment for such taking, alterations, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, at the option of Mortgagee, be retained and applied by Mortgagee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Mortgagor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Mortgagee, but Mortgagee shall not be obligated to see to the application of any amount paid over to Mortgagor.  If, prior to the receipt by Mortgagee of such award or payment, the Premises shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, and of the reasonable counsel fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment.

2.07 **REPAIRS BY MORTGAGEE.** Upon giving Mortgagor a thirty (30) day advance notice of its intent to do so, Mortgagee shall have the right from time to time to expend such sums as it shall deem necessary to keep the Premises in good condition and repair, and all sums so expended shall be added to and become a part of the Secured Indebtedness and shall bear interest and be payable as herein provided for the payment of Secured Indebtedness and interest and the lien of this Mortgage shall extend to and secure the same.  The aforesaid thirty (30) day notice period shall not apply to emergency repairs made by the Mortgagee to protect the Premises from further damage following a natural disaster.

2.08 **INDEMNIFICATION.** Mortgagor shall protect, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation attorneys' fees and expenses) imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Premises or any interest therein or receipt of any rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets

or ways; (c) any use, nonuse or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; or (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Premises or any part thereof. Any amounts payable to Mortgagee by reason of the application of this paragraph shall become part of the Secured Indebtedness and shall bear interest and be payable as herein provided for the payment of the Secured Indebtedness and interest and the lien of this Mortgage shall extend to and secure the same. The obligations of Mortgagor under this paragraph shall survive any termination or satisfaction of this Mortgage.

2.09 **HAZARDOUS SUBSTANCES.** Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances (hereinafter defined) on or in the Premises. Mortgagor shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law (hereinafter defined). Mortgagor shall promptly give Mortgagee written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Premises and any Hazardous Substance or Environmental Law of which Mortgagor has actual knowledge. If Mortgagor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Premises is necessary, Mortgagor shall promptly take all necessary remedial actions in accordance with Environmental Law at Mortgagor's expense. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law, and the following substances: (i) gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides and volatile solvents (other than such small quantities thereof as are generally recognized as being appropriate to normal use and to maintenance of the Premises), and (ii) materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection. To the maximum extent permitted by applicable law, Mortgagor shall indemnify Mortgagee and Mortgagee's successors, assigns, officers, directors, shareholders, employees, affiliates and agents (collectively, the "Indemnitees") against any and all liabilities, losses, damages or expenses suffered or incurred by Indemnitees as the result of Mortgagor's failure to observe or perform any of the provisions of this paragraph, as a result of the failure of Mortgagor or any other person to comply with any Environmental Law affecting the Premises or as a result of the presence, storage, disposal or treatment on the Premises of any Hazardous Substance. The indemnification obligations of Mortgagor under this paragraph shall survive payment or satisfaction of the Secured Indebtedness and any acquisition of the Premises by Mortgagee by foreclosure of this Mortgage, by conveyance in lieu of foreclosure or otherwise, and such provisions shall remain in full force and effect as long as the possibility exists that Indemnitees may suffer or incur any such liabilities, losses, damages or expenses. Notwithstanding any provision contained herein to the contrary, one or more of the parcels which constitutes the

Premises may be utilized for medical purposes and the the presence of Bio-Hazardous material waste or other substances necessary for the conduct of the medical-related use of the property, which are being handled consistently with generally accepted medical industry practices, shall not constitute a breach of this provision or of this Mortgage.


## SECTION 3

3.01 **EVENT OF DEFAULT.** Each of the following events shall constitute an "Event of Default" under this Mortgage: (i)  should Obligors fail to pay the Secured Indebtedness or any part thereof, when and as the same shall become due and payable; (ii)  should any warranty or material representation of Mortgagor or Obligors herein contained, or contained in any instrument, transfer, certificate, statement, conveyance, assignment or the Mediated Settlement Agreement given with respect to the Secured Indebtedness, prove untrue or misleading in any material aspect; (iii)  should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished by over 50% of its value at the time of this Mortgage; (iv)  should any federal tax lien or claim of lien for labor or material be filed of record against Mortgagor or Obligors or the Premises and not be removed by payment or bond within thirty (30) days from date of recording; (v)  should any claim of priority to this Mortgage by title, lien or otherwise be asserted in any legal or equitable proceeding that is not fully covered by applicable title insurance; (vi) should Mortgagor or Obligors, subsequent to the date of the Mediated Settlement Agreement, make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of Mortgagor or Obligors, or of any of Mortgagor's or Obligors' property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Mortgagor or Obligors, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should Mortgagor or Obligors be adjudicated a bankrupt or insolvent, or should Mortgagor or Obligors in any proceeding admit his insolvency or inability to pay his debts as they fall due; (vii)  should Mortgagor or Obligors fail to keep, observe, perform, carry out and execute the covenants, agreement, obligations and conditions set out in this Mortgage, or in the Mediated Settlement Agreement; (viii) should Mortgagor transfer, convey, encumber, mortgage, grant a security interest in or otherwise convey any interest in the Premises whatsoever without the prior written consent of Mortgagee (excluded, herefrom, is the execution of a new lease with an existing tenant or the renewal of an existing lease or the grant of any leasehold interest of three (3) years or less not containing an option to purchase; (ix)  should there occur, without the prior written consent of Mortgagee, any change in the ownership of Mortgagor, except that substitution of a Trustee or the death, addition, or deletion of a beneficiary to the Trust shall not constitute a change in ownership; (x) should an event of default or an event that but for the passage of time or giving of notice would constitute an event of default occur under the terms of the Mediated Settlement Agreement or any other promissory note or mortgage obligation from the Mortgagor or Obligors to Mortgagee; (xi)  should an event of default or an event that but for the passage of

8

time or giving of notice would constitute an event of default occur under the terms of any other mortgage encumbering all or any portion of the Premises which gives rise to a foreclosure lawsuit relating to the Premises by another mortgagee or lienholder; or (xii) should Mortgagor hereafter attempt to limit the maximum principal amount which may be secured by this Mortgage.

3.02 **REMEDIES.** If an Event of Default occurs and remains uncured, then in either or any such event, the aggregate sum or sums secured hereby then remaining unpaid, with interest accrued at that time in accordance with the terms of and consistent with the Mediated Settlement Agreement, and all moneys secured hereby, shall become due and payable forthwith, or thereafter, at the option of Mortgagee, or its assigns, as fully and completely as if all of the said sums of money were originally stipulated to be paid on such date, anything in the Mediated Settlement Agreement or any instrument or instruments or in this Mortgage to the contrary not-withstanding; and thereupon, or thereafter, at the option of Mortgagee, or its assigns, after written notice and demand followed by a thirty (30) day period to cure the default, a suit at law or in equity may be prosecuted as if all moneys secured hereby had matured prior to its institution.  Any premature acceleration or foreclosure suit, or other asserted Event of Default, shall in no way abridge, alter or amend the credit provisions set forth in paragraph 13 of the Mediated Settlement Agreement.  The Mortgagee, or its assigns, may do either or both of the following as to the amount so declared due and payable: (i) bring an action to enforce payment of the amount so declared due and payable, with or without bringing an action to foreclose this Mortgage; and/or (ii) foreclose this Mortgage as to the amount so declared due and payable, and the Premises, or any part or parts thereof, in one or more sales as determined by Mortgagee, shall be sold to satisfy and pay the same with costs, expenses and allowances.  In addition, Mortgagee shall also be entitled to take such action and avail itself of such remedies as may be available under the Uniform Commercial Code in effect in the State of Florida.

3.03 **RECEIVER.** In the event a suit shall be instituted to foreclose this Mortgage, Mortgagee, its successors or assigns, shall be entitled to petition at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver for all and singular the Premises and of all the rents, income, profits, issues and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in like cases, without reference to the adequacy or inadequacy of the value of the property hereby mortgaged or to the solvency or insolvency of the Mortgagor, Mortgagor's legal representatives, successors or assigns, and that such rents, profits, incomes, issues, and revenues shall be applied by such receiver to the payment of the Secured Indebtedness, costs, and charges, according to the order of said court and in accordance with applicable Florida Statutes.

**SECTION 4**

4.01 **PRIOR LIENS, LEASEHOLD, OR CONDOMINIUM.** If this is a junior Mortgage, or if this is a mortgage on a leasehold estate, Mortgagor shall pay all installments of principal and

interest and perform each and every covenant and obligation of the prior mortgage or the lease. Failure of Mortgagor to do so shall constitute a default hereunder.  Upon failure of Mortgagor to do so, Mortgagee may (but shall not be required to) make such payments or perform such covenants or obligations and the cost of same, together with interest at the maximum rate allowed by law, shall be payable by Mortgagor upon demand by Mortgagee and shall be secured by the lien of this Mortgage.  If this is a junior Mortgage and Mortgagor increases the amount due on any prior mortgage without Mortgagee's prior written consent, Mortgagee may, at its option, immediately or thereafter declare this Mortgage and the indebtedness secured hereby due and payable forthwith and thereupon may, at its option, proceed to foreclose this Mortgage. If this is a Mortgage on a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration or covenants creating or governing the condominium or planned unit development, and constituent documents.  If a condominium or planned unit development rider is executed by Mortgagor and recorded together with  this Mortgage, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider were a part hereof.

4.02 **<u>NOTICES.</u>** Any notice, election, or other communication required or permitted hereunder shall be in writing and shall be either: (i) sent by overnight courier service; or (ii) sent by certified or registered United States mail, return receipt requested, to the addresses set forth in the Mediated Settlement Agreement, the same being incorporated, herein, by reference. Any notice, election, or other communication delivered or mailed as aforesaid shall be effective upon date of delivery, if couriered by overnight delivery service be effective on the date of delivery and if mailed, such notice shall be effective upon date of actual receipt.  Any notice delivered to the address or addresses set forth above to the respective party shall be deemed delivered if delivery thereof is rejected or refused at the address provided. Each party hereto may change its address and addressee for notice, election, and other communication from time to time by notifying the other parties hereto of the new address and addressee in the manner provided for giving notice herein.

4.03 **<u>SUBROGATION.</u>** To the extent of the Secured Indebtedness, Mortgagee is hereby subrogated to the lien or liens and to the rights of the owners and holders thereof of each and every mortgage, lien or other encumbrance on the Premises which is paid or satisfied, in whole or in part, from the proceeds of the loan evidenced by the Secured Indebtedness or from the proceeds of any future or additional advances, and the liens of said mortgages or other encumbrances, shall be and the same and each of them hereby are preserved and shall pass to and be held by Mortgagee herein as security for the Secured Indebtedness, to the same extent that it would have been preserved and would have been passed to and been held by Mortgagee had it been duly and regularly assigned, transferred, set over and delivered unto Mortgagee by separate deed of assignment, notwithstanding the fact that the same may be satisfied and canceled of record, it being the intention that the same will be satisfied and canceled of record by the holders thereof at or about the time of the recording of this Mortgage.  Mortgagor and

Mortgagee acknowledge that no superior mortgage is being paid or satisfied by any proceeds of this Mortgage.

4.04 **GENERAL.**  The provisions hereof shall be binding upon and shall inure to the benefit of Mortgagor, the heirs, executors, administrators, legal representatives, successors and assigns (including without limitation subsequent owners of the Premises) and shall be binding upon and inure to the benefit of Mortgagee, its successors and assigns and any future holder of the Secured Indebtedness hereby secured, and any successors or assigns of any future holder of the Secured Indebtedness. This Mortgage may not be changed, terminated or modified orally or in any other manner than by an instrument in writing signed by the party against whom enforcement is sought.  The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Mortgage.  In no event shall all charges in the nature of interest charged or taken on this Mortgage or in connection with the Secured Indebtedness exceed the maximum allowed by law and in the event such charges cause the interest to exceed said maximum allowed by law, such interest shall be recalculated, and such excess shall be credited to principal, it being the intent of the parties that under no circumstances shall the Mortgagor be required to pay any charges in the nature of interest in excess of the maximum rate allowable by law.  In the case any one or more of the covenants, agreements, terms, or provisions contained in this Mortgage or in the Mediated Settlement Agreement shall be held or found invalid, illegal, or unenforceable in any respect, the validity of the remaining covenants, agreements, terms, or provisions contained herein and in the Mediated Settlement Agreement shall in no way be affected, prejudiced, or disturbed thereby.  This Mortgage shall be governed and construed by the laws of the State of Florida.  No act of Mortgagee shall be construed as an election to proceed under any one provision of the Mortgage or of the applicable statutes of the State of Florida to the exclusion of any other such provision, anything herein otherwise to the contrary notwithstanding.  Time is of the essence of this Mortgage.  No waiver of any covenant herein or in the obligations secured hereby shall at any time hereafter be held to be a waiver of any of the other terms hereof or of the Secured Indebtedness secured hereby, or future waiver of the same covenant.  The use of any gender shall include all other genders.  The singular shall include the plural.  Mortgagor will execute and deliver promptly to Mortgagee on demand at any time or times hereafter, any and all further instruments reasonably acquired by Mortgagee to carry out the provisions of this Mortgage.

4.05 **ENTIRE AGREEMENT, WAIVER OF JURY TRIAL.** It is understood and agreed that: ANY CONTEMPORANEOUS OR PRIOR REPRESENTATIONS, STATEMENTS, UNDERSTANDINGS AND AGREEMENTS, ORAL OR WRITTEN, BETWEEN MORTGAGOR AND MORTGAGEE ARE MERGED INTO THIS MORTGAGE AND INTO THE MEDIATED SETTLEMENT AGREEMENT, WHICH TOGETHER FULLY AND COMPLETELY EXPRESSES THEIR AGREEMENT, AND THAT THE SAME IS ENTERED INTO AFTER FULL INVESTIGATION, NEITHER PARTY RELYING ON ANY STATEMENT OR REPRESENTATION MADE BY THE OTHER WHICH IS NOT

EMBODIED IN THIS MORTGAGE OR IN THE MEDIATED SETTLEMENT AGREEMENT (SAID INSTRUMENTS BEING PART OF A CONTEMPORANEOUS TRANSACTION AND TO BE CONSTRUED TOGETHER).    MORTGAGEE AND MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY.    THIS PARAGRAPH IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE MAKING THE LOAN TO OBLIGORS.

IN WITNESS WHEREOF, the Mortgagor has executed these presents by causing his name and seal to be to be affixed hereto the day and year first above written.


Signed, sealed and delivered                    **MORTGAGOR:**
in the presence of:

                                                _____
_____               **Larry Reeder as Trustee of the Zachos**
  _____               **Life Insurance Trust dated February 26, 1998**
[Type/Print Name of Witness]


_____
  _____
  [Type/Print Name of Witness]

STATE OF FLORIDA
COUNTY OF OKALOOSA

        The foregoing instrument was acknowledged before me this _____ day of _____, by Larry Reeder, who (  )  is personally known to me or (    ) has shown me a driver license as identification.

                                _____
                                _____
                                 (Print/Type Name)
                                NOTARY PUBLIC
                                Commission number:_____
                                (NOTARIAL SEAL)
                                My Commission expires:_____

**Exhibit A**

**Parcel 1, located in Okaloosa County, Florida:**

Commence at the Northwest corner of Section 28, Township 3 North, Range 23 West, Okaloosa County, Florida; thence N90°00'00"E, 210.00 feet; thence S00°00'00"E, 33.00 feet to the Point of Beginning; thence N90°00'00"E 264.81 feet; thence S00°00'00"E 417.00 feet; thence N90°00'00"W, 264.81 feet; thence N00°00'00"E, 417.00 feet to the Point of Beginning.

**Parcel 2, located in Okaloosa County, Florida:**

Commencing at the intersection of the West right of way line of State Road #85 and the North line of Lot 12, Re-Subdivision of Block 5, OAKDALE MINIATURE FARMS, as recorded in Plat Book 2, Page 109 of the public records of Okaloosa County, Florida; thence North 88 degrees 19' 00" West, a distance of 309.97 feet to the Point of Beginning; thence South 12 degrees 54' 43" West, a distance of 200.28 feet; thence North 88 degrees 19' 00" West, a distance of 183.03 feet; thence North 12 degrees 54' 43" East, a distance of 200.28 feet; thence South 88 degrees 19' 00" East, a distance of 183.03 feet to the Point of Beginning. Containing 0.74 acres, more or less.

**Parcel 3, located in Okaloosa County, Florida:**

LOT K. COMMENCE AT A G.L.O. CORNER MARKING THE NORTHEAST CORNER OF THE SOUTHEAST 1/4 OF SECTION 34, TOWNSHIP 1 SOUTH, RANGE 24 WEST, OKALOOSA COUNTY, FLORIDA; THENCE SOUTH 00°47' WEST ALONG THE EAST LINE OF SECTION 34 A DISTANCE OF 300.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHEAST CORNER OF DONLABROOK GARDYNS, PLAT BOOK 5, PAGE 137; THENCE NORTH 89°21' WEST ALONG THE NORTH LINE OF DONLABROOK GARDYNS A DISTANCE OF 427.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHWEST CORNER OF DONLABROOK GARDYNS; THENCE SOUTH 00°47' WEST ALONG THE WEST LINE DONLABROOK GARDYNS A DISTANCE OF 1175.39 FEET TO AN IRON ROD AND THE POINT OF BEGINNING; THENCE CONTINUE SOUTH 00°47' WEST A DISTANCE OF 98.27 FEET TO AN IRON ROD; THENCE NORTH 89°13' WEST A DISTANCE OF 200.0 FEET TO AN IRON ROD AND THE EAST R/W OF MAR-WALT DRIVE (66' R/W); THENCE

NORTH 00°47' EAST ALONG SAID EAST R/W A DISTANCE OF 98.27 FEET TO AN IRON ROD; THENCE SOUTH 89°13' EAST A DISTANCE OF 200.0 FEET TO THE POINT OF BEGINNING.

LOT L: COMMENCE AT A G.L.O. CORNER MARKING THE NORTHEAST CORNER OF THE SOUTHEAST 1/4 OF SECTION 34, TOWNSHIP 1 SOUTH, RANGE 24 WEST, OKALOOSA COUNTY, FLORIDA; THENCE SOUTH 00°47' WEST ALONG THE EAST LINE OF SECTION 34 A DISTANCE OF 300.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHEAST CORNER OF DONLABROOK GARDYNS, PLAT BOOK 5, PAGE 137; THENCE NORTH 89°21' WEST ALONG THE NORTH LINE OF DONLABROOK GARDYNS A DISTANCE OF 427.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHWEST CORNER OF DONLABROOK GARDYNS; THENCE SOUTH 00°47' WEST ALONG THE WEST LINE DONLABROOK GARDYNS A DISTANCE OF 1273.66 FEET TO AN IRON ROD AND THE POINT OF BEGINNING; THENCE CONTINUE SOUTH 00°47' WEST A DISTANCE OF 98.27 FEET TO AN IRON ROD; THENCE NORTH 89°13' WEST A DISTANCE OF 200.00 FEET TO AN IRON ROD AND THE EAST R/W OF MAR-WALT DRIVE (66' R/W); THENCE NORTH 00°47' EAST ALONG SAID EAST R/W A DISTANCE OF 98.27 FEET TO AN IRON ROD; THENCE SOUTH 89°13' EAST A DISTANCE OF 200.0 FEET TO THE POINT OF BEGINNING.

LOT M: COMMENCE AT A G.L.O. CORNER MARKING THE NORTHEAST CORNER OF THE SOUTHEAST 1/4 OF SECTION 34, TOWNSHIP 1 SOUTH, RANGE 24 WEST, OKALOOSA COUNTY, FLORIDA; THENCE SOUTH 00°47' WEST ALONG THE EAST LINE OF SECTION 34 A DISTANCE OF 300.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHEAST CORNER OF DONLABROOK GARDYNS, PLAT BOOK 5, PAGE 137; THENCE NORTH 89°21' WEST ALONG THE NORTH LINE OF DONLABROOK GARDYNS A DISTANCE OF 427.0 FEET TO A CONCRETE MONUMENT MARKING THE NORTHWEST CORNER OF DONLABROOK GARDYNS; THENCE SOUTH 00°47' WEST ALONG THE WEST LINE DONLABROOK GARDYNS A DISTANCE OF 1371.93 FEET TO AN IRON ROD AND THE POINT OF BEGINNING THENCE CONTINUE SOUTH 00°47' WEST A DISTANCE OF 97.3 FEET TO A CONCRETE MONUMENT AT THE SOUTHWEST CORNER OF DONLABROOK GARDYNS; THENCE NORTH 89°30' WEST A DISTANCE OF 200.0 FEET TO A CONCRETE MONUMENT ON THE EAST R/W OF MAR-WALT DRIVE (66' R/W); THENCE NORTH 00°47' EAST ALONG SAID EAST R/W A DISTANCE OF 98.29 FEET TO AN IRON ROD; THENCE SOUTH 89°13' EAST A DISTANCE OF 200.0 FEET TO THE POINT OF BEGINNING.

**Parcel 4, Okaloosa County, Florida:**

Unit Nos. 102 and 103A (hereinafter referred to as the "Property") of Crestview Professional Condominiums (hereinafter referred to as the "Condominium Project") as described in the Declaration of Condominium, filed for record in Official Records Book 1264, Page 1144, is the Official Records of Okaloosa County, Florida, as amended by that Amendment to the Declaration of Condominium of Crestview Professional Condominiums, filed for record at Book 1280, Page 259, said Official Records, as further amended by that Amendment No. 2 to the Declaration of Condominium of Crestview Professional Condominiums, filed for record at Book 1465, page 14, said Official Records, and as further amended by that Amendment No. 3 to the Declaration of Condominium of Crestview Professional Condominiums, filed for record at Book 1481, page 775, said Official Records (hereinafter referred to as the "Declaration").